IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACY SZYPER, | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  20-4642 |
| | : | |
| AMERICAN MEDICAL RESPONSE MID-ATLANTIC, INC. *et al.* | : | |

## MEMORANDUM

**KENNEY, J.**                                                                                                          December 1, 2021

Plaintiff, Tracy Szyper, filed this lawsuit against American Medical Response Mid-Atlantic, Inc., American Medical Response, Inc., and Leslie Brock for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1100, *et seq*. ("PFPO").  ECF No. 1.  Before the Court are Defendants' Motions for Summary Judgement pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 34 and 35.

    **I.**        **FACTUAL BACKGROUND**

Plaintiff began working for Defendants American Medical Response Mid-Atlantic, Inc. and American Medical Response, Inc. (collectively "AMR" or the "AMR Defendants")[1] on May 7, 2018 as an Emergency Medical Technician ("EMT").  Parties' Joint Statement of Stipulated Facts (ECF No. 35-12) (hereinafter "Stip.") at ¶¶ 4, 5.  Plaintiff worked at AMR's Philadelphia

---

[1] AMR is a wholly owned subsidiary of American Medical Response, Inc.  Stip. at ¶ 1.

office which is located on Essington Avenue.  Stip. at ¶¶ 2, 4.  Defendant Mr. Leslie Brock interviewed Plaintiff for her position at AMR.  *Id*. at ¶ 6.  Mr. Brock also conducted Plaintiff's Emergency Vehicle Operator Course ("EVOC") training, during which he was alone with Plaintiff for around one hour.  *Id*.; ECF No. 25 at 2.  Plaintiff stipulates that Mr. Brock never said anything to her during the interview or training that Plaintiff felt was inappropriate.  Stip. at ¶¶ 6, 7, 19.

On June 27, 2018, Plaintiff went outside behind AMR's main building to smoke a cigarette while waiting for a new ambulance.  *Id.* at ¶¶ 14, 17.  Plaintiff saw Mr. Brock speaking to two other male AMR employees, Nicholas Kirschner and Christos Papakonstantinou.  *Id.* at ¶ 14.  Plaintiff was not part of the conversation between the three men; she was standing off to one side.  *Id.* at ¶ 15.  Mr. Brock and the two other AMR employees were discussing, in part, a webinar for a national EVOC training course.  *Id.* at ¶ 16.  On her employee incident report, Plaintiff recounted what happened next, saying, in part:

> Brock had told me to cover my ears. I looked at him & said jokingly 'I'm not listening to you anyway.'  He asked me again to cover my ears.  I cupped my hands over my ears but could still hear what was said.  Brock said to Papa and Nick, 'that made my dick hard.'  I uncupped my hands and told him I heard what he said. Brock then proceeded to grab me by my wrist and say something along the lines of 'Help me fix my problem.'

*Id.*  Plaintiff then told Mr. Brock to get off her, put her cigarette out, and went back inside.  *Id.* The incident made Plaintiff "feel extremely uncomfortable."  *Id.*  Plaintiff understood Mr. Brock's comment stating that Plaintiff could "solve his problem" to be a reference to wanting to have sex with her and viewed his conduct as an "unwelcome sexual advance."[2]  ECF No. 1 at ¶¶

---

[2] One witness to the event, Mr. Papakonstantinou, stated that Mr. Brock only gently took Plaintiff's wrist to lead Plaintiff away from them to "fix the problem" of her eavesdropping on their conversation.  ECF Np. 35-13 at ¶ 3.  However, at this stage the Court views the facts in the light most favorable to the non-movant, so will credit Plaintiff's version and interpretation of events.

27–28.  Plaintiff further stated in her report that "until said issues [are] resolved, I refuse to work my scheduled shifts."  Stip. at ¶ 16.

On June 28, 2018, AMR interviewed Plaintiff about the incident.  *Id.* at ¶ 23.  The interview was conducted by Mr. Brown, the person in charge of the Philadelphia office, and Ms. Byers, who worked in AMR's Human Resources Department.  *Id.* at ¶¶ 2, 23.  In the interview, Plaintiff was asked if she felt threatened by Mr. Brock.  *Id.* at ¶ 27.  Plaintiff responded, "I would go with uncomfortable."  *Id.* at ¶ 23.  Plaintiff testified that she likely had joked around with Mr. Brock prior to this incident.  *Id.* at ¶ 19.  Additionally, prior to this incident Mr. Brock had not touched Plaintiff inappropriately and he never touched her breast, groin, or face.  *Id.* at ¶¶ 19, 20.

At the AMR interview, Plaintiff stated that she would not return to work until the situation was resolved.  ECF No. 1 at ¶¶ 40–41.  Plaintiff did not see or communicate with Mr. Brock again during the remainder of her employment at AMR.  Stip. at ¶ 22.  Plaintiff was asked to return to work but refused because AMR had not terminated Mr. Brock.  ECF No. 1 at ¶¶ 42–45.

## II.  PROCEDURAL HISTORY

On July 9, 2018, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), alleging discrimination based on the aforementioned incident.  ECF No. 1 at ¶ 14; ECF No. 1, Exhibit A.  Plaintiff's PHRC Complaint was also filed with the Equal Employment Opportunity Commission ("EEOC").  *Id.*  On September 4, 2019, the PHRA informed Plaintiff that more than one year had passed since her Complaint was filed and advised her that she had the right to bring an action in an appropriate court.  *Id.* at ¶ 15; ECF No. 1, Exhibit B.  On June 24, 2020, the EEOC issued Plaintiff a Notice of Dismissal and Right

to Sue, informing her that she could bring suit in either federal or state court within ninety days of her receipt of the notice. *Id.* at ¶ 16; ECF No. 1, Exhibit C.

Plaintiff filed her Complaint with this Court against Defendants on September 22, 2020. ECF No. 1. The AMR Defendants filed their Answer on December 11, 2020. ECF No. 8. Defendant Brock filed his Answer on July 30, 2021. ECF No. 32. Currently pending before the Court are Defendants' Motions for Summary Judgment on all of Plaintiff's claims (ECF Nos. 34 & 35), which have been fully briefed and are ripe for disposition.

### III.      JURISDICTION AND STANDARD OF REVIEW

The causes of action set forth in Plaintiff's Complaint arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1100, *et seq*. ("PFPO"). ECF No. 1 ¶ 10. This Court has subject matter jurisdiction over the Title VII claims pursuant to 28 U.S.C. § 1331 because the cause of action arises under the laws of the United States. *Id.* at ¶ 11. The Court has supplemental jurisdiction over Plaintiff's PHRA and PFPO claims pursuant to 28 U.S.C. § 1367. *Id.* at ¶ 12. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in the Eastern District of Pennsylvania. *Id.* at ¶ 13.

Summary judgment is granted where the moving party has established "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; the requirement is that must be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247–48 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248.

When ruling on a summary judgment motion, the Court will consider the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). The Court's role is not to weigh the disputed evidence and determine the truth of the matter or make credibility determinations; rather the Court must assess whether there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 249.

## IV. DISCUSSION

Szyper has filed claims against Defendants for sexual harassment that allegedly created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1100, *et seq*. ("PFPO"). ECF No. 1. Defendants' motions seek judgment in their favor on all Plaintiff's remaining claims. ECF Nos. 34 and 35.

### A. Hostile Work Environment Claim under the PHRA and Title VII

The standards for hostile work environment claims are identical under Title VII and the PHRA. *Huston v. P&G Paper Products Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2008) (citation omitted). Sexual harassment is not a violation of Title VII unless it is "severe or pervasive" so as to "alter the conditions of [the victim's] employment and create an abusive working environment." *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998) (citation omitted). To maintain a claim for sexual harassment under Title VII and the PHRA, a plaintiff must show

that: (1) she suffered intentional discrimination because of her gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; and (4) the discrimination would detrimentally affect a reasonable person in like circumstances. *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). To hold an employer liable, the plaintiff must also show the existence of *respondeat superior* liability. *Id*.

The Court finds that Plaintiff's PHRA and Title VII claims fail because the record evidence, even when viewed in the light most favorable to Plaintiff, does not establish that the alleged harassment was sufficiently "severe or pervasive" to rise to the level of a Title VII or PHRA violation. *See Chinery v. Am. Airlines*, 778 F. App'x. 142, 145–46 (3d Cir. 2019) (upholding summary judgement on a Title VII hostile work environment case where plaintiff failed to meet the *prima facie* standard that the alleged conduct was "severe or pervasive").

Sexual harassment is actionable only if it is so "severe or pervasive" that it "alter[s] the conditions of [the victim's] employment and create[s] an abusive working environment." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (quoting *Faragher*, 524 U.S. at 786). The Court assesses the alleged harassment by looking at all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787–88 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The discriminatory "conduct must be extreme [enough] to amount to a change in the terms and conditions of employment." *Id*. at 788; *see also Clark Cty. Sch. Dist.*, 532 U.S. at 270. "Unless extremely serious, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim." *Chinery,* 778 Fed. Appx. at 145.

The Court finds that Mr. Brock's isolated statements and actions do not rise to the level of "severe or pervasive" conduct required to maintain a Title VII/PHRA claim. Plaintiff only identifies one incident of offensive conduct. *See Breeden*, 532 U.S. at 270-271 (a single incident of lewd, allegedly joking, comments made by a supervisor were "at worst an isolated inciden[t] that cannot remotely be considered extreme and serious" enough to violate Title VII) (internal citations omitted). Plaintiff concedes that prior to the relevant incident Mr. Brock "had never said anything to Plaintiff that she regarded as inappropriate." Stip. at ¶¶ 6, 7, 10. After the incident, Mr. Brock did not interact with Plaintiff for the remainder of her time at AMR. *Id*. at ¶ 22. Thus, there is no allegation of ongoing harassment. *See Saidu-Kamara v. Parkway Corp.*, 155 F. Supp. 2d 436, 439 (E.D. Pa. 2001) ("allegations of isolated or single incidents of harassment do not constitute a cognizable hostile work environment claim") (citing *Rush v. Scott Speciality Gases, Inc.*, 113 F.3d 476, 482 (3d Cir. 1997)).

Further, the comments made in this case—that a professional training course made Mr. Brock's "dick hard" and that Plaintiff should "help" him with that—while inappropriate for the workplace, were objectively far less severe than other "jokes" that have been found not sufficiently "severe and pervasive" to violate Title VII/PHRA. Stip. at ¶ 16; *see, e.g. Benny v. Pennsylvania, Dep't of Corr., State Corr. Inst. at Somerset*, 211 F. App'x 96, 97 (3d Cir. 2006) (alleged conduct not severe and pervasive where male co-worker insinuated that plaintiff was "blowing" someone to get overtime and made bets with other male employees regarding plaintiff and sex acts); *Grassmyer v. Shred-It USA, Inc.*, 392 Fed. App'x. 18 (3d Cir. 2010) (supervisor's regular references to the size of his genitalia, his sexual relationships, referring to women as derogatory terms, in addition to other sexually explicit comments, did not establish a hostile work environment).

Plaintiff points to Mr. Brock's grabbing her wrist and argues that "physical assault or serious, offensive touching can be 'sufficiently severe to support a hostile work environment claim.'" *Id.* at 12 (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986)). In support of this assertion, Plaintiff cites a case where the offending party placed dollar bills between plaintiff's bra strap and her bare skin. *Winkler v. Progressive Bus. Publis.*, 200 F. Supp. 3d 514, 517 (E.D. Pa 2016). There, the court denied defendant's motion to dismiss, finding that the single incident "was far more than a mere offensive utterance" and that this type of "physically threatening and humiliating conduct," even occurring just once, could support a hostile work environment claim. *Id.* at 519. That case is clearly distinguishable, however, because it involved invasive touching of an intimate area, as opposed to Mr. Brock touching Plaintiff's wrist. Stip. at ¶ 16. Moreover, courts have found that even touching of intimate areas does not rise to the level of a Title VII violation. *See Saidu-Kamara v. Parkway Corp.,* 155 F. Supp. 2d 436, 439–40 (E.D. Pa. 2001) (granting defendant's summary judgment motion where the supervisor on different occasions touched plaintiff's breasts and buttocks); *Bacone v. Philadelphia Housing Auth.*, 2003 U.S. Dist. LEXIS (E.D. Pa. 2003), aff'd per curiam, 112 Fed. Appx. 127 (3d. Cir. 2004) (finding no pervasive or severe conduct when the female harasser grabbed plaintiff's groin). Thus, the touching of Plaintiff's wrist here cannot meet the standard of severe and pervasive conduct.

Plaintiff also argues that a single incident can constitute severe harassment as a matter of law. ECF. No. 38 at 13. In support, Plaintiff cites to cases from other circuits where the offending party: forced plaintiff's face against his crotch, *Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 464 (7th Cir. 1990), touched plaintiff's breast, *Worth v. Tyler*, 276 F.3d 249, 268 (7th Cir. 2001), and raped the plaintiff, *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967–68

(9th Cir. 2001), among other very serious acts of sexual and physical assault.  ECF. No. 38 at 13.  While it is clear that a single incident can serve as the basis for a Title VII/PHRA claim, the incident must be extremely serious in order to meet the standard of "severe and pervasive."  *See Faragher*, 524 U.S. at 788 (an isolated incident of harassment can be actionable under Title VII only if it is "extremely serious").

     Looking at the totality of the circumstances in this case, the single incident alleged was not severe enough to be sexual harassment.  Unlike *Bacone,* where the plaintiff was alone when his harasser grabbed plaintiff's groin, here the incident occurred in an area that was open to public view and Plaintiff was easily able to leave the situation.  Stip. at ¶ 14.  In fact, this incident was observed by two other co-workers.  *Id.*  Additionally, the comments made by Mr. Brock to his co-workers and the Plaintiff did not surpass the level of a mere offhand remark or joke.  Mr. Brock made a lewd reference to being in a state of arousal and suggested that the Plaintiff could "help" him out with that, presumably by engaging in a sex act.  While clearly offensive and unsuitable for the workplace, especially when spoken to a subordinate employee, these comments are merely inappropriate, not threatening or degrading.  *See Jones v. Mon Valley Initiative*, 2020 U.S. Dist. LEXIS 127059 at *11 (W.D. Pa. 2020) (finding no Title VII violation where female supervisor told plaintiff on multiple occasions he was "sexy," described to plaintiff an instance when she performed oral sex on another man, and asked plaintiff about his sexual relationships with another woman); *Greer v. Mondelez Global, Inc*., 590 F. App'x. 170, 173 (3d Cir. 2014) ("'Mere offensive utterances' are insufficient to create a hostile environment, even if they engender offensive feelings in an employee") (quoting *Faragher*, 524 U.S. at 786).  Further, Plaintiff stated during the AMR investigation of the incident that she felt uncomfortable, not threatened.  *Id*. at ¶¶ 23, 27.

Considering the totality of the circumstances, the Court finds that Plaintiff has failed to demonstrate sufficiently severe or pervasive sexual harassment to constitute a claim for discrimination on the basis of sex. As a result, the Court will conclude that she has not satisfied a necessary element of her Title VII and PHRA claims and will grant Defendants' Motions.

### B. Supervisor Liability under the PHRA

An individual supervisory employee can be held liable under Section 955(e) of the PHRA for his own direct acts of discrimination.[3] *Pepitone v. Twp. of Lower Merion,* 2019 U.S. Dist. LEXIS 220525, at *11–12 (E.D. Pa. Dec. 19, 2019) (citing *McIlmail v. Pennsylvania*, 381 F. Supp. 3d 393, 415 (E.D. Pa. 2019)); *see also Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998). However, for liability to be imposed, there must be a cognizable predicate offense, i.e. a violation by the employer of the PHRA's primary anti-discrimination provision. *Lombard v. Lassip, Inc., No.* CV 17-964, 2017 WL 6367956, at *5 (E.D. Pa. Dec. 13, 2017) (internal citations omitted). "Individual defendants cannot violate PHRA section 955(e) when there is no corresponding section 955(a) violation by an employer to aid and abet." *Id.* (quoting *Burgess–Walls v. Brown*, No. 11–275, 2011 WL 3702458, at *6 (E.D. Pa. Aug. 22, 2011)).

Plaintiff argues that Mr. Brock qualifies as a "supervisor" and thus can be held individually liable for his own discriminatory conduct. ECF. No. 39 at 13. However, this Court need not address this argument because no individual liability can attach under the PHRA without a "predicate violation." ECF No. 34 at 22. As Plaintiff failed to show a *prima facie* case of sexual harassment, there is no predicate violation here.

### C. Employment Discrimination under the PFPO

---

[3] Plaintiff agreed to the dismissal of her Title VII claim against Defendant Brock, so the Court will only assess Plaintiff's claim against him under the PHRA. ECF No. 39 at 5.

Cases for employment discrimination brought under the PFPO are subject to the same analysis as those brought under Title VII. *Hong v. Temple University*, 2000 U.S. Dist. LEXIS 7301, at *9 (E.D. Pa. 2000), aff'd, 261 F.3d 492 (3d Cir. 2001). Plaintiff's claims under the PFPO are based on the exact same set of facts as her Title VII and PHRA claims. ECF 1, ¶ 18–77. Thus, for the same reasons as those set forth above, Plaintiff's PFPO claim fails.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (ECF Nos. 34 & 35) will be granted on all of Plaintiff's claims. An appropriate order follows.

DATE: 12/01/2021

BY THE COURT:

/s/ Chad F. Kenney

_____
**CHAD F. KENNEY, JUDGE**